IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:09-CV-00559-D

|  |  |
|---|---|
| KIMBLY C. BUFFORD, | ) |
| Plaintiff, | ) |
| v. | ) |
| EMBARQ MANAGEMENT COMPANY, | ) |
| Defendant. | ) |

## PLAINITIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Kimbly Bufford ("Plaintiff"), by and through the undersigned, does hereby submit this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint.

### I.  STATEMENT OF THE CASE

This action arises out of the racial discrimination, in the form of failure to hire based on race, the Plaintiff suffered when Embarq Management Company ("Defendant") refused to hire her for the position of Real Estate Manager II. On December 30, 2009, Plaintiff filed a Compliant in the United States District Court for the Eastern District of North Carolina, alleging that the actions of the Defendant were racially discriminatory in violation of Title VII, 42 U.S.C. § 1981 ("1981"), and North Carolina General Statute § 143-422.2 ("NCEEPA"). The parties agreed to an extension of time for Defendant to serve its Answer or otherwise plead, and Defendant Answered on March 24, 2020. On June 22, 2010, this Court granted Plaintiff's

Motion to Amend her Complaint and Defendant's request for additional time to serve its Answer or otherwise plead. On August 11, 2010, Defendant filed the current Motion to Dismiss. Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss ("DM") asserts that Plaintiff has failed to state a claim upon which relief can be granted with respect to all of Plaintiff's claims. Each of the Defendant's arguments is without merit and must be rejected. Accordingly, Plaintiff respectfully requests that Defendant's Motion to Dismiss Complaint be denied.[1]

## II. STATEMENT OF FACTS

In 2006, Plaintiff was employed by SunState Land Services and was contracted to work for the Defendant at its Wake Forest, North Carolina facility. (Am. Compl. ¶ 8). Defendant assigned Plaintiff to the Embarq Real Estate Group as a Project Coordinator. (Am. Compl. ¶ 8). In this position, Plaintiff was responsible for overseeing acquisition of easements for Defendant's field team prior to installation of cable or other equipment on the property. (Am. Compl. ¶ 9). In March of 2007, Jim Skipper resigned from his position as Real Estate Manager. (Am. Compl. ¶ 10). After Skipper's resignation, Plaintiff and another employee, Jillian L. Rodgers, took over his workload. (Am. Compl. ¶ 11). Plaintiff gained approximately nine months of hands-on experience in handling the job duties of a Real Estate Manager II. (Am. Compl. ¶ 11).

On or about December 6, 2007, Defendant posted the position of Real Estate Manager II. (Am. Compl. ¶ 12). Upon recommendation by John Weldon, an employee of Defendant, on December 7, 2007, Plaintiff submitted her résumé and cover letter to Jennie Freeman, Recruiter, in order to formally apply for the position. (Am. Compl. ¶ 13). On the same day, Plaintiff

---

[1] If this Court finds Plaintiff's pleading in any way defective, which the Plaintiff vigorously denies, Plaintiff would request an opportunity to amend the Complaint to meet this Court's requirements.

received a notice from Defendant's Human Resources Department that Jillian L. Rodgers had also referred her for the position. (Am. Compl. ¶ 13). On or about January 10, 2008, Plaintiff received an e-mail from James B. Farris, Real Estate Manager and the person responsible for filling the position to schedule a telephone interview with Farris and Monica A. Megyesi, a Real Estate Manager II on January 14, 2008. (Am. Compl. ¶ 14).

During the interview, Plaintiff was informed that there were more than eighty applicants for the position and that she was one of three chosen to interview. (Am. Compl. ¶ 15). Plaintiff later learned that the other two applicants were Carol Clocky and Cathy Breedlove, both white females. (Am. Compl. ¶ 15). On or about February 8, 2008, Plaintiff was informed by both Clocky and Breedlove that they had been offered the Real Estate Manager II position but declined the offer because of the salary. (Am. Compl. ¶ 16). On or about February 14, 2008, Plaintiff learned that Penny Wilson, another white female employee of the company, although she had not applied, was assigned to the position by Farris. (Am. Compl. ¶ 17).

Plaintiff spoke with Farris about this choice and he explained that he decided to put Penny Wilson in the position as an internal rotational developmental move to save money. (Am. Compl. ¶ 18). He also told Plaintiff that her interview was great and that she had all the necessary qualifications for the position. (Am. Compl. ¶ 18). Subsequently, Plaintiff spoke with various employees of Defendant to inquire about the internal rotational developmental move policy but no one, including the Human Resources Department, was aware of it. (Am. Compl. ¶ 19). Plaintiff alleges and believes that she was denied the Real Estate Manager II position solely because of her race. (Am. Compl. ¶ 20).

### III. ARGUMENT

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Further, "a complaint need not 'make a case' against a defendant or '*forecast evidence* sufficient to prove an element' of the claim.... It need only '*allege facts* sufficient to state elements' of the claim." *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 349 (4th Cir. 2005) (internal citations omitted and emphasis in original). An adequately stated claim must be supported by a showing of any set of facts consistent with the allegations in the complaint in order to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 563 (2007). A complaint can survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1960 (2009), quoting *Twombly*, supra, 550 U.S. at 570. For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court should construe allegations in the complaint as true and taken in the light most favorable to the plaintiff. *Howell v. Gagnon*, 2010 WL 3239058, 3 (E.D.N.C. 2010), citing *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969).

### A. Plaintiff Has Pled Facts Sufficient to State a Claim of Race Discrimination For Failure to Hire Under Title VII and Under § 1981.[2]

Defendant first argues that Plaintiff has not pled facts sufficient to state a claim under Title VII or § 1981 because she has not established all of the elements of race discrimination. The Defendant's argument is without merit because Plaintiff is not required to plead "specific facts establishing a prima facie case of discrimination," *E.E.O.C. v. Propak Logistics, Inc.*, 2010 WL 3081339 (W.D.N.C. 2010) (holding the compliant was sufficient to survive a 12(b)(6) motion where the complaint sufficiently identified the nature of the discrimination, failure to hire

---

[2] "The elements required to establish a prima facie case of race discrimination are the same under Title VII and section 1981; therefore, the court considers these claims together." *McDougal-Wilson v. Goodyear Tire and Rubber Company*, 427 F. Supp. 2d 595, 604 (E.D.N.C. 2006). See also, *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002).

based on national origin, and the alleged time period involved),citing *Twombly*, supra at 570. The *Twombly* Court explicitly stated that its holding did not overrule the *Swierkiewicz* rule that a "[c]omplaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination." *Twombly*, supra at 569.

A claim is facially plausible when the plaintiff pleads factual content sufficient to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Miller v. Ingles*, 2009 WL 4325218 ( W.D.N.C. 2009), (holding a claim for age discrimination is not plausible when a 65 year old man is replaced by a 71 year old man), citing *Twombly*, supra at 565. The Plaintiff has pled specific facts establishing all of the elements of Title VII employment discrimination claim for failure to hire. Defendant argues that Plaintiff has failed to plead sufficient facts to support a claim of an adverse employment action pursuant to Title VII. This argument fails because the failure to hire is an adverse employment action under to Title VII. *Royster v. Costco Wholesale Corp.*, 378 F. Supp 2d 595, 605 (M.D.N.C. 2005) (holding failure to hire an applicant or demoting an employee are adverse employment actions). Defendant argues that this action arises out of its failure to promote Plaintiff. However, Plaintiff was an employee of SunState Land Services working as a contractor for Defendant, making Defendant's failure to promote analysis irrelevant. Even if this Court holds that the position was a promotion, Plaintiff suffered an adverse employment action when she did not receive the promotion, e.g. permanent employee status, and increase in salary.

To establish a prima facie case of discriminatory hiring, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she applied and was qualified for a position for which the employer was seeking applicants; (3) she was rejected, despite her qualifications; and (4) the position remained open after her rejection or was filled by a person who is not a member

of the plaintiff's protected class. *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

The Complaint states that Plaintiff is an African American woman. Therefore she is a member of a protected class. It also alleges facts sufficient to establish the second and third elements of the prima facie case: that she is qualified for the job because she gained approximately nine months of hands on training; at least two of the Defendant's employees recommended her for the job; she was one of three people selected for an interview out of eighty applicants; and Farris told Plaintiff that her interview was "great" and that she possessed all the necessary qualifications for the position. (Am. Compl. ¶¶ 11, 13, 15, 18). Despite her qualifications, Plaintiff was not offered the position, even after <u>both</u> other finalists had declined the position.

The final element of the prima facie case is the key that establishes a plaintiff was not hired "under circumstances which give rise to an inference of unlawful discrimination." *Sears*, at 851, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The Complaint alleges that the position remained open and was filled, approximately one week after both white applicants declined the position, with a white female employee who had not applied for the position. (Am. Compl. ¶ 17).

These allegations are sufficient to state a plausible claim for relief under Title VII and under § 1981 of racial discrimination for failure to hire. Therefore, Defendant's Motion to Dismiss must be denied.

### B. Plaintiff's Allegations Are Consistent with Discrimination.

Defendant also argues that Plaintiff has pled allegations that are inconsistent with discrimination. In making these arguments, Defendant misapplies both the law and the facts.

Defendant cites a line of cases following *Proud v. Stone*, 945 F.2d 796, (4th Cir. 1991) as supporting Defendant's premise that employers who hire workers within a protected group are not credible targets for charges of pretextual adverse employment action. *Jiminez v. Mary Washington College*, 57 F.3d 369, 378 (4th Cir. 1995). However, *Proud* and its progeny are easily distinguishable from the facts of the instant action because it is not a situation in which the plaintiff was hired and then fired by Farris a short time later.

In *Proud*, the plaintiff claimed that the individual who hired him fired him several months later in violation of the ADEA. Supra at 796. The plaintiff was a 68-year old man at the time he was hired to the position of Chief Accountant for the Army's Central Accounting Division. The plaintiff's performance was unsatisfactory and he was counseled on two different occasions; at the second counseling session he was told that he would be fired if his performance was not improved within thirty days. The same person who had hired the plaintiff terminated him approximately five months later when his performance failed to improve. The position remained open for approximately six months until a 32-year old employee was promoted to fill the position. The plaintiff alleged that he was fired for discriminatory reasons based on his age. The court held that in cases where the same person does the hiring and the firing and the termination occurs within a short time after the hiring, there is a strong inference that discrimination was not the motivating factor in the termination. *Proud*, 945 F.2d at 797.

The instant action is clearly distinguishable because the Plaintiff was not hired. It is further distinguishable because Farris did not have any control over the position that the Plaintiff held as Project Coordinator because as a contractor, Plaintiff worked for SunState, not the Defendant. Therefore, it cannot be argued that the fact that Plaintiff worked for Defendant creates an inference that the defendant did not harbor a "discriminatory animus" toward her.

A lack of direct evidence that an employer harbors discriminatory animus towards a particular class does not compel the conclusion that the employer did not discriminate. *Sears*, supra at 855. Nor does the fact that an employer hires other members of a particular protected class compel the conclusion that there was no discriminatory intent in the determination not to hire one particular member of that class. *Id*.

In *Sears*, the plaintiff was a Hispanic male who had worked part-time for the employer in one of its California stores for approximately ten years. When plaintiff moved to North Carolina, he requested a transfer to a local store and inquired about job openings for the same position that he had held in California. Management for the store in Morehead City initially told the plaintiff that they would be happy to hire him. The plaintiff contacted the store several times over several months, filled out three job applications, and was eventually hired pending a drug screen and background check. The plaintiff was then told that he was not going to be hired after all because they did not have money to hire him. The plaintiff later learned that the employer had hired a white woman, who had never worked for Sears before, and had no experience in the position.

In *Sears*, the court held that the fact that the employer hired "other Hispanic individuals in other departments does not mean that its failure to hire the [plaintiff] was free from discriminatory intent." *Id*. at 855. The purpose of Title VII is to protect individuals not groups. *Id*. See also, *Connecticut v. Teal*, 457 US 440, 453-55 (1982) ("Congress never intended to give an employer license to discriminate against some employees…merely because he favorably treats other members of the employees group").

As in *Sears*, the Defendant in the instant action cannot avoid the inference of discriminatory intent. Further, Plaintiff emphatically refutes Defendant's argument that

Plaintiff's "own assertions" suggest allegations that are inconsistent with discrimination. The fact that several of Defendant's employees encouraged Plaintiff to apply for the position of Real Estate Manager II does not imply that the Defendant was not motivated by discriminatory intent. Farris, the person responsible for filling the position, did not recommend the Plaintiff for the job nor did he encourage her to apply. See *Burlington Industries, Inc.*, 524 U.S. 747, 762 (1998) (holding that in general, only a supervisor or other person acting with the authority of the employer can "undertake a tangible employment action."). The fact that some of the Defendant's employees thought Plaintiff should apply does nothing to negate the inference permitted by these facts that the Defendant was motivated by discriminatory intent because those employees were not in the position of authority to make the hiring decision.

The Defendant's discriminatory intent is reasonably inferred from the facts of the Plaintiff's claim: that three candidates were selected for interviews for the position; both of the white women were offered the position, but plaintiff was not, even after the other two candidates declined the position; the Plaintiff was well qualified for the job and had done well in the interview; but the position was eventually filled by a white woman who had neither applied nor interviewed for the position.

Farris told Plaintiff that he put Penny Wilson in the position was because of an "internal rotational developmental policy" to save money. However, none of the Defendant's employees, including the Human Resources Department, was aware of that policy. Under the *McDonnell Douglas* formula, once an employer provides a legitimate, non-discriminatory reason for its decision, the plaintiff must demonstrate that the reason offered was a pretext. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 807 (1973). The fact that the Defendant's employees and Human Resource Department were unaware of the "internal rotational developmental policy"

creates the inference that the Defendant's proffered legitimate, non-discriminatory reason for the decision not to hire Plaintiff was a pretext. The inference is strengthened by the fact that Farris only applied the policy after the two white applicants declined to take the position. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000) (holding that the plaintiff's evidence showing that the supervisor made derogatory, age-based comments and singled him out for harsher treatment was enough to for the jury to find that the employer's legitimate, non-discriminatory reason was a pretext).

Plaintiff's allegations are consistent with discrimination and raise an inference that the Defendant acted with discriminatory intent in failing to hire the Plaintiff. Given all reasonable inferences that may be drawn from the facts alleged in the Plaintiff's Amended Complaint, the Court could find that these facts state a plausible claim for which relief may be granted. Therefore the Defendant's Motion to Dismiss must be denied.

### C. Defendant's Discriminatory Failure to Hire is a Violation of Public Policy Under North Carolina General Statute § 143-422.2.[3]

Plaintiff acknowledges that N.C. Gen. Stat. § 143-422.2 does not create a specific statutory right of action under North Carolina Law. *Hughes v. Bedsole*, 48 F.3d 1378, 1383 (4th Cir. 1995). Alleged violations of § 143-422.2 are instead analyzed under the North Carolina common law theory of wrongful discharge. *Id.* However, Plaintiff argues that this analysis is too narrow an approach. The statute clearly states that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to *seek, obtain* and hold employment without discrimination." § 143-422.2 (emphasis added). By limiting the allowable claims to be brought

---

[3] Defendant also argues that this Court does not have jurisdiction over this claim. This argument is without merit and Defendant does not cite any cases or make any arguments to support their argument. 28 U.S.C § 1367 provides that district courts having original jurisdiction over any civil claim also have supplemental jurisdiction over all other claims that "are so related to the claims in actions within such original jurisdiction that they form part of the same case or controversy." § 1367(a) (West 2010).

to wrongful discharge, the courts are only protecting the right to hold a job and barring relief to those claimants who suffer discrimination while seeking and obtaining employment.

## IV. CONCLUSION

For the reasons stated above, Plaintiff has pled sufficient facts to state a claim of race discrimination for failure to hire under Title VII and under § 1981. Therefore, the Defendant's Motion to Dismiss should be denied.

This 17th day of September, 2010.

s/Geraldine Sumter
N.C. Bar No. 11107
Ferguson, Stein, Chambers, Gresham
    & Sumter, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, NC 28204
Telephone: (704) 375-8461
Facsimile: (704) 334-5654
E-mail:gsumter@fergusonstein.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,** using the CM/ECF system which will send notification of such filing to counsel for defendant:

              Patricia L. Holland
              E-mail address: Patricia.Holland@jacksonlewis.com

      This 17th day of September, 2010

              s/ Geraldine Sumter
              N.C. Bar No: 11107
              Ferguson, Stein, Chambers, Gresham
                  & Sumter, P.A.
              741 Kenilworth Avenue, Suite 300
              Charlotte, North Carolina 28204
              Telephone:  704-375-8461
              Facsimile:   704-334-5654
              Email:   gsumter@fergusonstein.com

              Attorney for Plaintiff